[No. 15052. Department One. January 6, 1919.]

MARY E. MILLER et al., *Respondents*, v.
CARRIE E. GOLTZ et al., *Appellants*.[1]

CANCELLATION OF INSTRUMENTS (2)—FAILURE OF CONSIDERATION. A conveyance by an aged couple to a daughter in consideration of life support, fully performed on the part of the daughter, should not be cancelled for dissatisfaction on the part of one of the grantors because the daughter, through a mistake, instituted insanity charges against her mother; especially where such act was not wilfully and purposely wrong, and extensive improvements had been made on the property for the convenience of the grantors.

Appeal from a judgment of the superior court for King county, Hall, J., entered March 4, 1918, in favor of the plaintiffs, in an action to cancel a deed, tried to the court. Reversed.

[1]Reported in 177 Pac. 687.

*H. M. Dalton,* for appellants.

*Shorett, McLaren & Shorett,* for respondents.

MITCHELL, J. — Respondents, husband and wife, owned a home for twenty-five years, consisting of a house and lots in Seattle, which they conveyed to appellant Carrie E. Goltz in August, 1917, in consideration of the written obligation of appellants to furnish respondents future support and care. Within a few months Mrs. Miller became dissatisfied and, without the knowledge and consent of her husband, in the name of both, commenced and prosecuted this suit to a favorable judgment for a cancellation of the deed of conveyance.

There was no fraud in the inception of the conveyance. Respondents' rights to a cancellation depend upon the manner in which appellants have kept, or failed to keep, their promise.

The property was the community property of respondents, who have been married forty-eight years. He is ninety-two years of age and has not been able to perform much labor for nearly twenty years, the last two or three of which he has been an invalid. She is sixty-nine years of age, has always been industrious, and for the last twenty years, by her own efforts in keeping boarders and by occasional jobs at nursing, has largely maintained the home. The last two years she had no boarders nor work at nursing. She has a daughter by a former husband and five children by her present husband, of whom the appellant Carrie E. Goltz, wife of the other appellant, is the youngest. The children are all married and are without means beyond their own needs, though all of them have more or less contributed from time to time to the care and support of their parents, Carrie E. Goltz much more than the others.

The property had become heavily incumbered. Outstanding against it were a $700 mortgage, some five or six years overdue, with interest unpaid; assessments for street improvements, delinquent and amounting to two or three times the original sum, with threat of foreclosure proceedings; and delinquent taxes. It appears the city authorities had made complaint of the unsanitary condition of the premises. Mrs. Miller had tried as best she could, without success, to sell or mortgage the property, or a portion of it, to meet their needs. Such were the conditions when, agreeably, and without the knowledge of the other children, the conveyance was made. According to the plan, Mr. and Mrs. Goltz moved into the house. He is a working man of good earning capacity and uses his money for his family. Not having sufficient means, he and his wife promptly borrowed $1,200, giving their note and a six-year mortgage on the property, with the privilege of making monthly payments to take care of the old incumbrances and make improvements. All of this money, except a small amount still in the bank to pay for improving the basement of the house, was used by paying $300 on the old mortgage, about $450 to pay delinquent street assessments and general taxes, and about $400 to improve and modernize the house. New electric wiring and running water were put in the house. A wash-bowl, toilet, bath tub, hot and cold water and sink in the kitchen were installed, and a cesspool established in the yard. Formerly, as shown by all the testimony, Mrs. Miller had been a neat and careful housekeeper, but the last year or more, being reduced in means and because of her advancing years, her invalid husband, who had become more helpless, had been neglected as to his personal cleanliness and the condition of his bedroom. Now he had been moved into a large, light,

clean, bedroom, provided with clean bed clothes, his baths looked after and, together with his wife, had been supplied with all necessaries in the way of food and other comforts.

Mrs. Goltz cleaned house and kept it so; Mr. Goltz helped the workmen with the improvements on the building and out in the yard. Mrs. Miller took part, and things went well for a few months; then the rather usual thing happened. Mrs. Miller began to chafe under a sense of lost control of the property, to which she was attached and by habit esteemed as her own. She sought the ready sympathy of two daughters against the changed conditions. The record in this case, all of which has been carefully read, shows that, with increasing annoyance, she was violent and abusive to her daughter Carrie, to the extent that the daughter became practically sick, and after seeking the advice of two old friends of the family (the friends not directing or meddling, however), had Mrs. Miller apprehended on a complaint of insanity. On this arrest, Mrs. Miller was confined in jail a few hours because the physicians summoned did not appear at the time needed for the inquiry. The examination of Mrs. Miller resulted in the dismissal of the insanity complaint.

Since then Mrs. Miller has refused to be reconciled, and shortly after brought this action. She occupies her room in the home, but declines invitations to take her meals there. A daughter, Mrs. Emily Chase, visiting for about a month, failed to persuade her. At the trial, Mrs. Miller testified as follows:

"Q. Now, then, you say you are afraid to eat there? A. I would not eat a bite in that house, no sir, not out of their hands, because I would not touch them. Q. Are you afraid? A. I am not afraid, but I would not take a bite out of their hands. Q. You are not afraid.

The reason you would not take a bite out of their hands is because of your feeling against them, isn't it? A. Yes, I will never forgive them for trying to send me to an insane asylum when I was not deserving of it. Q. Well, that is the only reason, isn't it, that you feel against them so hard? A. Yes, sir, on account of this insane business."

Without question Mrs. Miller, for some years, has at intervals, for days at a time, engaged in very violent and abusive spells, such as the one leading up to the complaint of insanity. Mrs. Goltz and a sister so testify, as well as others not members of the family. On this subject, as well as his disposition towards the case, the treatment by his wife and his present treatment, Mr. Miller, whose mind is clear, being examined in his room before the trial judge, testified as follows:

"After Carrie and Emily went away, she never gave me a bath for a year. I never had a bath at all. And in the morning if I was unable to get up, she would wet a cloth and throw on the bed to me and sometimes it would be warm and sometimes it would be cold. If I would ask her, was there any warm water? She would say no, there ain't any warm water. . . . Q. Mr. Miller, did your wife tell you she was going to bring this suit to get those deeds cancelled? A. She did not. Q. Are you in favor of this suit to have the deeds cancelled? A. I am not. I am unqualifiedly opposed to it. I won't allow my name to appear in the complaint. I will not. I am perfectly satisfied with the deed as it is signed and want it to remain that way. Q. Would you be satisfied if the judge should have the deed cancelled and your daughter Carrie would have to go away and your wife live here alone? A. I won't live with her. Q. Why not? A. I will not, because she does not treat me well. Q. You want your daughter Carrie then to take care of her? A. I want my daughter, and Emily has come down from Chilliwack to assist her and she is stopping with her

now to help her take care of the house and take care of me. I am well taken care of. Q. Mr. Miller, do you recollect a month ago or two when Mrs. Miller hit you or tried to hit you over the head with a newspaper? A. Oh, she got wild. Q. Do you recollect that? A. Yes. Yes. Q. Did she try to strike you with a newspaper when you were in bed? A. Yes. . . . Q. Does your daughter Carrie give you the kind of meals that you enjoy, and good food? A. She does. She gives me anything I ask for. Q. She has always been good to you? A. Been good to me? I could not ask better treatment. Q. Has she been kind to her mother, too? A. So far as I know. Her mother would not let anybody be kind to her. She is crazy. That is what is the matter with her and she has been for over thirty years. I have put up with all of these things, rather than break up a home and scatter the children.''

The trial court, at the conclusion of the testimony and arguments of counsel, in passing on the case, observed:

''Mrs. Miller is perfectly sane and so, for that matter, is Mr. Miller. But it was working a hardship on her, having reached the age that she had, being gray-haired, and along in years, and to be charged with being of unsound mind and being confined in the jail for even just a short period of time was something that should have not been done to her and, while I do not believe that Mrs. Goltz when she swore out the warrant realized fully what would happen from the effects of it, it has left such a bitterness in Mrs. Miller's mind that it will be impossible for her for a long time, at least, to resume her normal relations with her daughter.''

The law in this class of cases is well settled. In the case of *Gardner v. Frederick,* 96 Wash. 324, 165 Pac. 85, this court said:

''The rule in this state, as well as the great weight of authority, is to the effect that, where an aged par-

ent conveys property to a son or daughter, or other person, in consideration of future support and care, and there is a willful and wrongful withholding of such support and care, in equity the contract may be rescinded, or, if rescission cannot be had, an action for damages will lie. . . . The aged parent is entitled to respectful and considerate treatment, such as would naturally be prompted by the filial affection of a child. . . . There is some evidence that there was a deliberate attempt to withhold from her that gentle sympathy which not only would be prompted by filial affection, but which the law, in cases of this character, demands.''

We are satisfied this rule does not define the conduct of appellants. Manifestly, there are nothing but trifles here, except the single instance of the insanity charge. It was an unfortunate mistake. But we must consider it from the viewpoint of Mrs. Goltz, and by the test determine if she was willfully and purposely wrong in making the complaint. The proof is wholly lacking to show any plan or scheme on her part to improperly get rid of her mother. The only persons to whom she spoke before making the complaint were old friends of her mother, and that for advice. It is obvious that she never for a moment thought or intended that her mother would be needlessly restrained. Again, while it is true that one's feelings become injured at a mistaken formal charge of unsound mind, yet the person preferring the complaint is to be censured or not according to the circumstances and motives prompting the act. There is nothing criminal or disgraceful in the possession of an unsound mind, whether the person be young or advanced in years, and often, in token of proper care, instead of remaining silent with reference thereto, it becomes one's imperative duty to have such matter inquired into, without the risk, necessarily, of being charged as unfaith-

ful in the event physicians, after they see such person, decide there is no need of hospital care and treatment.

The proof in this case repeats a common story. Mrs. Miller, advanced in years, still surrounded by familiar scenes, influenced by the associations of long years, treasuring every nook and corner, tree and shrub about the place as her own, and having revelled with commendable pride in the rule of her own home, suddenly awakes to find her dominion not simply divided, but wholly gone, and it matters not into whose hands. The difficulty of accommodating herself to these new things frets and irritates. So far, she has refused to listen to counsel and entreaties, and seems to have forgotten that the venture was a joint one including her invalid husband, who confessedly is content and much better cared for than formerly. The situation is unfortunate for Mrs. Miller, and even considering that, because of the one mistake of the daughter, it will be some time before Mrs. Miller resumes her normal relations with her daughter, as remarked by the trial court, we do not find sufficient cause to cancel the conveyance; especially considering the work appellants have done, are doing, and are willing to continue, together with the personal obligations entered into by them for such purposes.

The judgment is reversed, with instructions to dismiss the action.

MAIN, C. J., TOLMAN, and CHADWICK, JJ., concur.